UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CIV-23967-RAR

**DANIEL DUMOND**,

    Plaintiff,

v.

**MIAMI-DADE POLICE DEPARTMENT**, *et al.*,

    Defendants.

_____/

## ORDER DISMISSING COMPLAINT IN PART AND GRANTING LEAVE TO AMEND

**THIS CAUSE** comes before the Court on Plaintiff's civil rights Complaint filed under 42 U.S.C. § 1983. *See* Complaint ("Compl.") [ECF No. 1]. Plaintiff has sued four different defendants for a variety of alleged constitutional violations that occurred during Plaintiff's arrest and subsequent pretrial detention. The Court takes judicial notice of the fact that Plaintiff previously filed a nearly identical § 1983 complaint in this Court which was ultimately dismissed by Judge Roy K. Altman "for failure to prosecute and for failure to comply with court orders" pursuant to FED. R. CIV. P. 41(b). *See* Order to Dismiss, *Dumond v. Rodriguez*, No. 22-cv-20561 (S.D. Fla. Aug. 9, 2022), ECF No. 24 at 1.

However, before dismissing the Complaint, Judge Altman screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and identified several deficiencies—some fatal and some remediable—with Plaintiff's Complaint. *See* Screening Order, *Dumond v. Rodriguez*, No. 22-cv-20561 (S.D. Fla. Aug. 9, 2022), ECF No. 22 ("Altman Order"). Plaintiff's Complaint now attempts to revive the same claims that Judge Altman has already screened. With the benefit of the Altman Order, the Court finds that: (1) several claims must be dismissed *with prejudice*; (2) Plaintiff's claim against Officer Rodriguez shall be allowed to proceed; and (3) Plaintiff shall be

given an opportunity to amend, if he so wishes, to raise a claim of excessive force against the officers who arrested him.

## LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, under § 1915(e)(2), "the court *shall* dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## ANALYSIS

Plaintiff's Complaint asserts claims against four different defendants for four distinct constitutional violations. *First*, Plaintiff raises an official capacity claim against the Miami-Dade

Police Department's Kendall District and Southern Division for "negligently and brutally beat[ing] me with malicious and sadistic intent during my arrest[.]" Compl. at 7. *Second*, Plaintiff sues Officer "L. Rodriguez" in his individual capacity, claiming that he intentionally "threw" Plaintiff in the back of his police car, refused to place Plaintiff in a seat belt, and then drove "like a mad man [going] over 90 mph zig zagging through traffic." *Id.* at 8. *Third*, Plaintiff avers that Officer "G. Montoya" "used a racial slur toward me . . . in front of the whole unit and [that] he is a known racist officer." *Id.* Plaintiff also claims that Officer Montoya "tried to fabricate a lie against which I was found not guilty." *Id. Fourth*, Plaintiff brings a claim against the Miami-Dade Department of Corrections and Rehabilitation in their official capacity because "they denied me contact with my attorney." *Id.*

With the exception of the claim against the Miami-Dade Department of Corrections, all of the allegations in Plaintiff's Complaint were previously raised before Judge Altman. In accordance with 28 U.S.C. § 1915A, Judge Altman screened Plaintiff's claims and concluded that some claims should be dismissed with prejudice "for failure to state a plausible claim" and others should be dismissed without prejudice so that Plaintiff could have the opportunity to amend. *See* Altman Order at 13. The Court will now screen each of Plaintiff's claims in turn, with particular attention to whether Plaintiff resolved the legal deficiencies previously identified in the Altman Order.

### A. *Miami-Dade Police Department*

Plaintiff's first claim is against two different sections of the Miami-Dade Police Department in their official capacities—the "Kendall District" and the "Southern Division." Compl. at 7. Plaintiff recounts that several officers from the Department were "maliciously and sadistically [ ] involved in beat[ing] me up while my hands were cuffed in the back on my stomach I was kicked and punched on my head and ribs and was beaten by K-9." *Id.* This same official

capacity claim was dismissed with prejudice by Judge Altman for two distinct reasons. *First*, Judge Altman found that Plaintiff improperly relied on a *respondeat superior* theory of liability to bring his official capacity claim and that Plaintiff failed "to allege 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Altman Order at 4–5 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). In other words, since Plaintiff did not claim that the Miami-Dade Police Department had a "custom or policy that led to the deprivation of [his] constitutional rights," Plaintiff was barred from suing the Department in its official capacity based on the isolated acts of its employees. *Id.* at 5. *Second*, Judge Altman also concluded that Plaintiff only sought monetary damages against the Department, precluding him from bringing forth any official capacity claims. *See id.* at 6 (citing *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995)) ("[T]he Eleventh Amendment bars plaintiff from collecting monetary damages in official-capacity suits[.]").

The same two flaws identified by Judge Altman are still present in Plaintiff's Complaint. Instead of alleging that the Department had a "custom or policy" which led to the alleged excessive use of force, Plaintiff merely recounts the allegedly unlawful activities of its employee police officers. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("[N]either respondeat superior nor vicarious liability exists under § 1983. . . . Thus, only when a policy or custom of the municipality inflicts the injury does § 1983 liability exist."). In addition, Plaintiff only seeks monetary damages, *see* Compl. at 7 (requesting "$350,000.00 plus medical expenses and court cost and any future mental health program."), so the Eleventh Amendment bars Plaintiff from raising any official capacity claims against any defendant, *see Cross*, 49 F.3d at 1503 ("The Eleventh Amendment bars appellees' section 1983 lawsuit for monetary damages against [the defendants] in their official capacities."). For these

reasons, the official capacity claim against the Miami-Dade Police Department is **DISMISSED with prejudice** for failing to state a claim under which relief can be granted.

Nevertheless, given the content of Plaintiff's allegations against the Department, the Court will also permit Plaintiff, if he desires, to file an amended claim which sues the officers who "maliciously and sadistically" attacked him during his arrest <u>in their individual capacities</u>. The Court warns Plaintiff, however, that a claim against a group of unknown or unidentifiable police officers (otherwise known as "fictious-party pleading") "is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Although Plaintiff is not required to identify the officers by their full names, he must still "adequately describ[e] the person to be sued so that the person [can] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992). If Plaintiff cannot sufficiently identify the officers who allegedly used excessive force against him, then he cannot bring a claim under § 1983 against them. *See Knowles v. Inch*, No. 20-cv-21242, 2020 WL 8812833, at *2 (S.D. Fla. June 4, 2020) ("Plaintiff has also claimed unknown officers caused his injuries. . . . Plaintiff's isolated allegation that the unknown officers kicked and stepped on him does not meet this standard."), *report and recommendation adopted*, 2021 WL 650512 (S.D. Fla. Feb. 19, 2021).

### B. Officer Rodriguez

Plaintiff's second claim is against Officer Rodriguez. According to Plaintiff, Officer Rodriguez was tasked with transporting Plaintiff to the hospital so he could be treated for the injuries he sustained during his arrest. That ride to the hospital, in Plaintiff's words, was an unmitigated disaster. Plaintiff recounts that Officer Rodriguez "threw me in the back of the police car while my hands were still in handcuffs from behind[.]" Compl. at 8. Once Plaintiff was placed in the car, Officer Rodriguez refused to secure Plaintiff with a seatbelt and, instead, "intentionally" began to drive "like a mad man [going] over 90 mph zig zagging through traffic [and] ignoring my

plea that I was in pain[.]" *Id.* Plaintiff also claims that he suffered an additional injury during this car ride since he became "stuck in between the back seat of the police car" due to Officer Rodriguez's intentionally reckless driving. *Id.*

Judge Altman concluded that Plaintiff's allegations against Officer Rodriguez constituted a viable deliberate-indifference claim. Judge Altman explained his reasoning as follows:

> Dumond's allegations that Officer Rodriguez drove recklessly with Dumond in the back of his squad car—knowing that Dumond was already injured and that he wasn't wearing a seatbelt—state a viable Eighth Amendment claim.
>
> Our conclusion is buttressed by the Fifth Circuit's decision in *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013). There, the Fifth Circuit addressed an allegation that a police officer "acted with deliberate indifference to [the plaintiff's] safety" by driving a prison van recklessly, even though he knew that the plaintiff "was not provided with a seatbelt and that he could not protect himself when the prison van stopped abruptly because he was shackled in leg irons and handcuffs." *Id.* at 408.
>
> [. . . .]
>
> [Unlike other cases, the] defendant in *Rogers* knew that the plaintiff was unrestrained and then *purposefully* drove recklessly in order to injure him. That "additional allegation of reckless driving," the Fifth Circuit concluded, was sufficient to distinguish the prior cases because (in the Fifth Circuit's view) the officer "[knew] that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs." *Rogers*, 709 F.3d at 409; *see also Brown v. Fortner*, 518 F.3d 552, 560 (8th Cir. 2008) (allowing a deliberate-indifference claim to proceed where "Fortner rejected Brown's request for a seatbelt. Fortner drove recklessly and ignored requests by the inmate passengers in his van for him to slow down").
>
> So too here. Like the plaintiff in *Rogers* . . . Dumond specifically alleges that Officer Rodriguez "continued to *maliciously* and *intentionally* [drive] very fast," *even after* hearing Dumond's cries for help. And it was this "zigzagging through traffic like a mad man doing at least 90-100 mph with me in the back seat" that (Dumond says) "caused my injuries to get worse." Unlike other cases in which courts have characterized an officer's failure to restrain an inmate with a seatbelt as *mere* negligence, Dumond's allegations—if taken

> as true—indicate that Officer Rodriguez's reckless driving was both "malicious[ ] and intentional[.]"

Altman Order at 9–11 (emphasis in original & cleaned up).

The Court agrees with Judge Altman's analysis and will allow Plaintiff's claim against Officer Rodriguez to proceed. To establish a *prima facie* deliberate indifference claim, Plaintiff is required to show "(1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). Plaintiff has alleged facts showing that he was seriously harmed by Officer Rodriguez's reckless driving, that Officer Rodriguez's decision to drive recklessly (and with an injured and unsecured Plaintiff in the back seat) was an intentional decision, and that there was a causal link between Plaintiff's injury and Officer Rodriguez's driving. In accordance with the Altman Order and the Fifth Circuit's decision in *Rogers*, the Court finds that Plaintiff has sufficiently stated a deliberate-indifference claim against Officer Rodriguez.

### C. Officer Montoya

Next, Plaintiff brings a two-part claim against Officer Montoya in his individual capacity. Plaintiff contends that Officer Montoya violated his constitutional rights in two ways: (1) Officer Montoya directed a racial slur (the "n-word") at Plaintiff "in front of the whole unit" and that his general behavior is that of a "racist officer," and (2) Officer Montoya "tried to fabricate a lie against" Plaintiff of which Plaintiff was eventually found not guilty. Compl. at 8. The allegations against Officer Montoya in this Complaint are identical to the ones disposed of by Judge Altman from Plaintiff's original complaint. *See* Altman Order at 6. Judge Altman dismissed both claims with prejudice, and the Court agrees that neither allegation states a claim upon which relief can be granted.

To start, Judge Altman correctly determined that "[a] corrections officer doesn't violate a pretrial detainee's constitutional rights when he threatens or intimidates (or directs racial slurs at) him." Altman Order at 7 (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *see also Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) ("[W]e note that a petitioner must allege more than that he has been subjected to 'verbal taunts. . . . [h]owever distressing' in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights.") (alterations in original); *625 Fusion, LLC v. City of Ft. Lauderdale*, 526 F. Supp. 3d 1253, 1271 (S.D. Fla. 2021) ("[T]here are no cases espousing the Plaintiff's position that racial slurs alone can 'shock the conscience' in a constitutional sense."); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("To the extent plaintiff seeks to assert a claim of verbal abuse, this Court notes that verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (quoting *Del Carpio v. Walker*, No. 95-cv-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)).[1] While Officer Montoya's decision (if true) to call Plaintiff the "n-word" was "inappropriate, unprofessional, and reprehensible" it was not *unconstitutional* and is not cognizable under § 1983.

Plaintiff's assertion that Officer Montoya falsified a disciplinary report against him fares no better. The Court adopts the findings set forth in the Altman Order that Officer Montoya's decision to falsely accuse Plaintiff of an infraction was *not* a constitutional violation since Plaintiff

---

[1] In his original Complaint, Plaintiff also alleged that Officer Montoya "'attempted to hit me' during an 'assault.'" Altman Order at 6. Since it was unclear whether this "assault" was physical in nature, Judge Altman gave Plaintiff the opportunity to clarify whether "Officer Montoya actually struck him." *Id.* at 7 n.4. Although Plaintiff never responded to Judge Altman, his current Complaint is clear that there was no physical altercation between him and Officer Montoya; therefore, Judge Altman properly concluded that Officer Montoya's use of a racial slur *without* physical contact was not a constitutional violation.

had the full and fair (and successful) opportunity to rebut Officer Montoya's allegations. *See* Altman Order at 8 ("Dumond plainly received adequate due process here. He, indeed, was found "not guilty" of the "fake infraction" Officer Montoya filed. In other words, he had a fair (and ultimately successful) opportunity to rebut the false charges against him. And Officer Montoya's mere act of filing a false grievance doesn't give rise to a viable § 1983 claim.") (cleaned up); *see also Fretwell v. Arrant*, No. 5:08cv56, 2009 WL 2168697, at *2 (N.D. Fla. July 17, 2009) ("The filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation."). Since Plaintiff's claims against Officer Montoya suffer from the same flaws that Judge Altman identified months ago, the Court **DISMISSES** these allegations **with prejudice**.

### D. *Miami-Dade Department of Corrections and Rehabilitation*

The final claim in Plaintiff's Complaint has not been previously raised. The facts here are straightforward: the Department of Corrections "admitted that they have violated my Due Process and U.S.C. when they denied me contact with my attorney." Compl. at 8. As proof of this alleged violation, Plaintiff attaches a response to an inmate grievance where a prison official concedes that Plaintiff was improperly prohibited from contacting his attorney via telephone. *See* Grievance Response [ECF No. 1-1] at 14 ("Although you were on telephone restrictions you should have been allowed to contact your Attorney. Officer P. Johnson stated that she didn't know that a [sic] inmate can call their Attorney if they are on Red Card restrictions. I apologize for any inconvenience this may have caused you."). Unsatisfied with this response, Plaintiff still seeks monetary damages for this specific instance he was denied access to his attorney. *See* Compl. at 7.

For starters, this claim is against the Miami-Dade Department of Corrections in their official capacity. And as explained above, Plaintiff cannot bring an official capacity claim if he only seeks monetary damages. *See Cross*, 49 F.3d at 1503. Although Plaintiff could

hypothetically replead this allegation as an individual capacity claim against the correctional officer who prevented him from calling his lawyer, the Court will not provide Plaintiff with the opportunity to amend here since it would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment . . . where amendment would be futile."). Plaintiff does not allege a continuous or ongoing denial of his right to contact his attorney. Instead, Plaintiff merely points to a *one-time* occurrence where a correctional officer prevented him from using the telephone to contact his attorney and that, once he complained about this deprivation, prison officials remedied the problem by informing the correctional officer that Plaintiff could contact his attorney even if he was on "telephone restrictions." *See* Grievance Response [ECF No. 1-1] at 14.[2]

This isolated, minimal infringement of Plaintiff's ability to freely contact his lawyer (which was immediately corrected) did not "procedurally or substantively disadvantag[e]" Plaintiff and did not meaningfully interfere with his right to due process or his right to be represented by counsel. *See Chandler v. Baird*, 926 F.2d 1057, 1061–63 (11th Cir. 1991) (holding that plaintiff's "*sixteen-day* administrative confinement," where he was unable to freely contact his attorney or access legal materials, did not infringe upon the plaintiff's constitutional rights because they were "minor and short-lived impediments"); *Cline v. Tolliver*, 434 F. App'x 823, 825 (11th Cir. 2011) ("A plaintiff cannot state a claim by simply alleging systemic denial of access to courts or legal resources without tying the denial to an actual injury."). Accordingly, Plaintiff's claim against the Miami-Dade Department of Corrections and Rehabilitation fails to state a claim upon which relief

---

[2] The Court also notes that the reason prison officials prevented Plaintiff from using the telephone to call his attorney in the first place is that he lost the privilege to use the telephone after he was disciplined for disorderly conduct. *See* Inmate Disciplinary Report [ECF No. 1-1] at 6; *see also Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996) (holding that prisons can have a "penological need" to restrict an inmate's use of a prison telephone).

can be granted and must be **DISMISSED with prejudice** since it cannot be amended to allege a valid deprivation of a constitutional right.

## CONCLUSION

Plaintiff's Complaint contains a mix of valid and legally insufficient claims. To summarize, Plaintiff's Complaint may proceed against Officer Rodriguez in his individual capacity. All of Plaintiff's remaining claims against the other Defendants are dismissed *with prejudice* for failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b); *White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020) ("A dismissal for failure to state a claim under the early screening provision [of 28 U.S.C. § 1915A] is no different from a dismissal under [FED. R. CIV. P. 12(b)(6)]. It is on the merits and with prejudice.") (cleaned up).

However, the Court also finds that Plaintiff *could* allege an individual capacity claim against the police officers who purportedly used excessive force against Plaintiff when he was arrested. To ensure that Plaintiff will have all of his claims heard in the most expeditious way, the Court orders Plaintiff to complete one of the following two options by **January 9, 2023**:

1. If Plaintiff wishes to proceed against Officer Rodriguez and/or he is unable to identify the officers who used excessive force, Plaintiff shall file a notice with the Court, explaining that he would like to proceed. Once he has filed that notice, the Court will immediately direct the U.S. Marshal's Service to serve Officer Rodriguez. If Plaintiff learns the identity of the excessive-force officers during the pendency of his litigation against Officer Rodriguez, Plaintiff will have the opportunity to file an amended complaint bringing excessive-force claims against those officers. *See* FED. R. CIV. P. 15(a).

2. If Plaintiff can *sufficiently identify* the individual officers who committed excessive force, Plaintiff may file an Amended Complaint which brings claims against those officers in their individual capacities. The Amended Complaint must include *all claims* against *all defendants*. The Amended Complaint, if filed, must substantially follow the form complaint for civil-rights actions, adhere to all applicable procedural rules, and state all grounds for relief in twenty pages.

If Plaintiff fails to provide a definitive answer by **January 9, 2023**, the Court will—just as before—dismiss the case pursuant to FED. R. CIV. P. 41(b) for failing to prosecute or for failing to comply with the Court's orders.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint [ECF No. 1] shall **PROCEED** against Defendant Officer Rodriguez.  All other claims against all other defendants are **DISMISSED with prejudice**.

2. By **January 9, 2023**, Plaintiff must either: (1) file a notice expressing his intent to proceed *solely* with the claim against Officer Rodriguez, *or* (2) file an amended complaint that complies with this Order.

3. If Plaintiff intends to file an amended complaint, the amended complaint must be labeled "Amended Complaint" and must show the case number referenced above, so that it will be filed in this case.

4. The amended complaint must contain a separate paragraph as to each Defendant explaining what that particular Defendant did and the supporting facts to show why that person is being sued.

5. Plaintiff is warned that failure to file the amended complaint on time and in compliance with this Court's Orders shall result in dismissal of this case for failure to prosecute or failure to comply with court orders.  *See* FED. R. CIV. P. 41(b).

6. Plaintiff is reminded that the amended complaint should, at the very least, cure the deficiencies identified within this Order to state a claim for relief.

7. Plaintiff's Motion for Leave to Proceed *in forma pauperis* [ECF No. 3] is **GRANTED**.  Plaintiff shall owe the United States $350.00, which Plaintiff must pay to the Clerk of Court as funds become available.  To effectuate these payments, the agency with custody over Plaintiff must forward these payments from Plaintiff's prisoner account to the Clerk of Court

anytime the account balance exceeds $10.00. That agency shall continue to make these payments until Plaintiff has paid the filing fees in full.

8. The Clerk's Office is **INSTRUCTED** to administratively **CLOSE** this case. The Clerk is further **INSTRUCTED** to provide Plaintiff with a copy of this Court's civil rights complaint form.

**DONE AND ORDERED** in Miami, Florida, this 16th day of December, 2022.

                                                RODOLFO A. RUIZ II
                                                UNITED STATES DISTRICT JUDGE

cc:    Daniel Dumond, *pro se*

        Inmate Account Department
        ATTN: Cassandra Jones
        Miami-Dade County Corrections & Rehabilitation
        2525 NW 62nd Street
        Miami, FL 33147

        Financial Department,
        United States District Court
        Southern District of Florida